| | |
|---|---|
| UNITED STATES DISTRICT COURT<br>SOUTHERN DISTRICT OF NEW YORK<br>-------------------------------------------------------------------X<br>JEURY SANTOS and ISABELLA TORRES,<br>on behalf of themselves and on behalf of all other<br>similarly situated persons,<br><br>                              Plaintiffs,<br><br>          -against-<br><br>BLINK HOLDINGS, INC., individually and d/b/a<br>BLINK FITNESS,<br><br>                              Defendant.<br>-------------------------------------------------------------------X | Index No.:<br><br><br><u>CLASS AND COLLECTIVE<br>ACTION COMPLAINT</u><br><br><br>Plaintiffs Demand a Trial<br>By Jury |

Plaintiffs, JEURY SANTOS and ISABELLA TORRES, by and through their attorneys, PHILLIPS & ASSOCIATES, PLLC, on their own behalf and on behalf of all others similarly situated, hereby complain of the Defendant, upon information and belief, as follows:

## INTRODUCTION

1. Plaintiffs bring this collective action, on behalf of themselves and all current and former Assistant Managers, Front Desk and Maintenance employees, and persons in similar positions regardless of their precise titles who work and/or worked for BLINK HOLDINGS, INC., individually and d/b/a BLINK FITNESS, charging that their employer violated their rights under the Fair Labor Standards Act of 1938, as amended (29 U.S.C. §§201 *et seq*.) hereinafter "FSLA," by illegally altering employee computerized time records to reflect fewer hours as a means of withholding employee overtime compensation.

2. Defendant willfully refused to pay Plaintiffs, and all similarly situation persons, overtime wages owed to them for working hours in excess of a forty-hour work week, at a rate of one and a half times their normal rates of pay.

3. Plaintiffs also bring this action, individually, and on behalf of all other similarly situated current and former employees of Defendant, as a class action under the Federal Rules of Civil Procedure Rule 23 to remedy violations of the New York Labor Law, Art. 6 §§ 190 *et seq.* and Art. 19 §§ 650 *et seq.*, and the supporting New York State Department of Labor regulations, 12 N.Y.C.R.R. Part 142 *et seq.* (collectively, "NYLL") for failure to pay overtime wages.

4. Additionally, Plaintiffs Santos and Torres bring this action to seek redress for Defendant's unlawful retaliation in violation of the FLSA and NYLL, including but not limited to, terminating Plaintiffs' employment because they complained about not being paid their rightful wages.

## JURISDICTION AND VENUE

5. The Court has jurisdiction over Plaintiffs' FLSA claims pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 216(b), and supplemental jurisdiction under 28 U.S.C. § 1367.

6. This action involves a question of federal law.

7. Venue is proper in this district based upon the fact that a substantial part of the events or omissions giving rise to the claim occurred within the Southern District of the State of New York. 28 U.S.C. §1391(b).

## PARTIES

8. Plaintiff Santos is male resident of the State of New York, County of Bronx.

9. Plaintiff Torres is a female resident of the State of New York, County of Bronx.

10. At all times material, Plaintiffs Santos and Torres were employees of Defendant BLINK FITNESS.

11. At all times material, Defendant BLINK HOLDINGS, INC., individually and d/b/a BLINK FITNESS (herein also referred to as "BLINK FITNESS") was and is a foreign business corporation duly incorporated under the laws of the State of Delaware.

12. At all times material, Defendant BLINK FITNESS was and is a foreign business corporation authorized to conduct business in the State of New York.

13. At all times material, Defendant BLINK FITNESS was and is a foreign business corporation which does conduct business in the State of New York and maintains fitness clubs throughout New York City, Long Island, Westchester, New Jersey, Philadelphia, and Los Angeles.

14. At all times material, Defendant BLINK FITNESS was and is a subsidiary of Equinox Fitness.

15. Plaintiffs, and all similarly situation persons, were engaged in commerce while working for Defendant BLINK FITNESS.

16. Plaintiffs, and all similarly situation persons, are non-exempt employee within the meaning of the FLSA and NYLL.

17. At all times material, Defendant BLINK FITNESS employed two or more individuals "handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce."

18. At all times material, Defendant BLINK FITNESS grossed more than $500,000 in the past fiscal year.

## COLLECTIVE ACTION ALLEGATIONS

19. Plaintiffs bring the First Cause of Action under the FLSA on behalf of themselves and all other similarly situated persons who worked for Defendant as Assistant Managers, Front Desk and Maintenance employees, and persons in similar positions regardless of their precise titles who

3

work and/or worked for BLINK FITNESS at any time between January 12, 2015 and the date of final judgment in this action and who elect to opt-in to this action ("FLSA Collective Action Members").

20. The FLSA Collective Action Members are similarly situated because, while employed by Defendant, they had substantially similar job requirements and pay provisions, and are and have been subject to Defendant's decisions, policies, plans, practices, procedures, routines, and rules to willfully fail and refuse to pay them overtime at the rate one and a half times their regular hourly rate for all hours worked in excess of forty in a workweek.

21. The claims of Plaintiffs Santos and Torres are essentially the same as those of the other FLSA Collective Action Members.

22. The FLSA Collective Action Members were all classified as non-exempt and employed on an hourly basis during the relevant period, they were routinely required, suffered, or permitted to work more than 40 hours per week, and were not paid for all hours worked over 40 at a rate of one and half times their regular hourly rate.

23. The FLSA Collective Action Members are all victims of Defendant's illegal scheme of withholding overtime compensation by altering employee computerized time records to reflect fewer hours.

## CLASS ACTION ALLEGATIONS

24. Plaintiffs bring the Third cause of action under Rule 23 of the Federal Rules of Civil Procedure, on behalf of themselves and a class consisting of all persons who were employed as Assistant Managers, Front Desk and Maintenance employees, and persons in similar positions regardless of their precise titles who work and/or worked for BLINK FITNESS at any time between January 12, 2012 through the date of final judgment in this action ("NYLL Class").

25. The NYLL Class identified above is so numerous that joinder of all members is impracticable. Although the precise number of the NYLL Class is not known to the Plaintiffs, the facts on which the calculation of that number can be based are presently within the sole control of Defendant.

26. Defendant BLINK FITNESS operates over 60 locations and implemented its illegal scheme of altering employee time records to withhold overtime compensation across multiple locations throughout New York.

27. Upon information and belief, there are more than one hundred other similarly situated persons who were/are employed by Defendant as Assistant Mangers, Front Desk employees, and Maintenance employees within New York during the relevant period.

28. This action is properly maintainable as a class action under Federal Rule of Civil Procedure 23(b). There are questions of law and fact common to the NYLL Class that predominate over any question solely affecting individual members of the NYLL Class, including but not limited to:

    a. Whether Defendant failed to keep true and accurate time records for all hours worked by the NYLL Class by altering employee time records;

    b. Whether Defendant failed and/or refused to pay the NYLL Class overtime pay for hours worked in excess of 40 hours per workweek as required by the NYLL;

    c. The nature and extent of the class-wide injury and the appropriate measure of damages for the NYLL Class; and

    d. Whether Defendant's policy and practice, and the scheme used to deprive the NYLL Class of being paid the proper overtime rate for all hours worked over 40, was done willfully or with reckless disregard of the law.

29. The claims of Plaintiffs are typical of the claims of the NYLL Class they seek to represent. The NYLL Class and its members have been subjected to Defendant's policy and pattern or practice

of altering employee time records and failing to pay proper overtime wages for hours worked in excess of 40 hours per week. Defendant acted and refused to act on grounds generally applicable to the NYLL Class, thereby making declaratory relief with respect to the Class appropriate.

30. A class action is superior to other available methods for the fair and efficient adjudication of this litigation – particularly in the context of wage litigation like the present action, where an individual plaintiff may lack the financial resources to vigorously prosecute a lawsuit in federal court against a corporate defendant. The members of the NYLL Class have been damaged and are entitled to recovery as a result of Defendant's common and uniform policies, practices, and procedures. Although the relative damages suffered by the individual members of the NYLL Class are not *de minimis*, such damages are small compared to the expense and burden of individual prosecution of this litigation. In addition, class treatment is superior because it will prevent unduly duplicative litigation that might result in inconsistent judgments about Defendant's practices.

## COLLECTIVE AND CLASS FACTUAL ALLEGATIONS

### *Plaintiff Santos*

31. On or about May 9, 2016, Plaintiff Santos began working for Defendant BLINK FITNESS as an Assistant Club Manager at Defendant BLINK FITNESS' Riverdale club in the Bronx.

32. At the outset of his employment, Plaintiff Santos worked under the supervision of Monia Burke ("Burke"), Defendant BLINK FITNESS' Riverdale Club Manager.

33. Throughout the course of his employment at the Riverdale club, Plaintiff Santos worked an average of 50 hours per week.

34. Plaintiff Santos was normally scheduled to work five days per week and nine hours per day (including a one-hour lunch break). However, Plaintiff was rarely permitted to take a lunch break because the Riverdale club was understaffed and constantly busy during lunch hours. In the

6

unlikely event that Plaintiff did take a lunch break, it was never more than 30 minutes. Therefore, Plaintiff repeatedly worked in excess of 40 hours per week.

35. Furthermore, Plaintiff Santos was regularly required to work past his scheduled shift. Plaintiff was normally scheduled to work between 3:00 pm and midnight. However, because the Riverdale club only closed to patrons at midnight, Plaintiff was often required to stay later to usher out the last gym members, clean the facility, and lock up the club.

36. Although Plaintiff Santos worked approximately 50 hours per week at the Riverdale club, Plaintiff was not paid for any hours over 40 and was not paid the premium overtime rate.

37. Defendant BLINK FITNESS would illegally edit electronic time records for non-exempt employees to make it appear as though they had only worked a 40-hour week. For example, Burke would edit Plaintiff Santos' time records to show a one-hour lunch break, although Plaintiff rarely took lunch.

38. Upon information and belief, Defendant BLINK FITNESS carried out this illegal scheme across numerous locations. Employees from other locations, including the Riverdale and Mount Eden clubs, would tell Plaintiff Santos that management routinely adjusted employee time records to withhold overtime pay.

39. When Plaintiff Santos confronted Burke about not paying overtime, **Burke told Plaintiff that she could not pay him for any hours over 40 because corporate discouraged club managers from allowing employees to work overtime.**

40. **Instead, Burke offered to "roll-over" Plaintiff Santos' overtime hours to the next pay period so Defendant BLINK FITNESS would not have to pay Plaintiff the premium overtime rate of time and a half.**

41. **Burke carried out this illegal scheme for all non-exempt employees at the Riverdale club.**

42. **Burke carried out this illegal scheme with Defendant BLINK FITNESS' knowledge and/or consent, and to the benefit of Defendant BLINK FITNESS.**

43. **However, because Plaintiff always worked a minimum of 40 hours per week, Burke never rolled-over Plaintiff Santos' overtime hours and they continued to accrue from week to week.**

44. Each time Plaintiff Santos questioned Burke about not rolling-over his overtime hours, Burke would simply tell Plaintiff, "Next time, next time" and continue to withhold Plaintiff's rightful wages.

45. In or around mid-June 2016, Burke was terminated by Defendant BLINK for improperly editing electronic time records for another employee, Katherine (last name currently unknown). Ironically, Defendant BLINK FITNESS' stated reason for terminating Burke was that she (Burke) improperly edited Katherine's time cards to reflect "too many hours" and "overpaid" her. In reality, Burke was not overpaying Katherine but simply "rolling-over" her overtime hours from a prior week.

46. For approximately four days after Burke's termination, Plaintiff Santos was the highest-ranking employee at the Riverdale club. During this four-day period, Plaintiff worked 10 overtime hours and was properly paid for these hours because management could not falsely edit his time records. **This was the only time that Plaintiff was paid for any overtime hours while working for Defendant BLINK FITNESS.**

47. After four days, Vlad Jordan ("Jordan") was hired as the new Riverdale Club Manager. Jordan immediately resumed Defendant BLINK FITNESS' illegal practice of editing employee time records and withholding overtime compensation.

48. Approximately two weeks after Jordan's hire, Plaintiff Santos confronted Jordan about not being paid overtime. In response, Jordon told Plaintiff, **"Corporate does not allow us to pay overtime.**

**We can't pay overtime."**  As a substitute, and as part of Defendant BLINK FITNESS' illegal scheme, Jordan offered to roll-over Plaintiff's overtime hours to the next pay period.

49. However, as with Monia Burke, Jordan never rolled-over Plaintiff Santos' hours because Plaintiff always worked a minimum of 40 hours per week, and an average of 50 hours per week.

50. As an example of Defendant BLINK FITNESS' overtime violations, in or around July 2016, Jordan directed Plaintiff Santos to work late to thoroughly clean the facility because Defendant BLINK FITNESS' President, Todd Magazine, and Equinox CEO, Harvey Spevak, planned to visit the Riverdale club the following morning.  Plaintiff tirelessly cleaned the facility that evening and clocked-out at 3:00 am.  Nevertheless, Jordan edited Plaintiff's time records to make it appear as though Plaintiff had left work at midnight.

51. In or around August 2016, Plaintiff Santos was transferred to Defendant BLINK FITNESS' Grand Concourse club in the Bronx and began working under the supervision of Tabatha Matias ("Matias").

52. Matias continued to carry out Defendant BLINK FITNESS' illegal scheme of withholding overtime pay for Plaintiff Santos, and similarly situated employees, at the Grand Concourse club.

53. Between August 2016 and December 2016, Plaintiff Santos worked approximately 45 hours per week.  During this period, Plaintiff was usually able to leave on time, but was almost always required to work through his lunch break.

54. Just like the prior managers, Matias would illegally edit Plaintiff Santos' time records to reflect a one-hour lunch break even though Plaintiff had not taken a vast majority of those lunch breaks.

55. Between early and mid-January 2017, Plaintiff worked approximately 50 to 52 hours per week. Plaintiff was required to work more overtime because gym enrollment at the Grand Concourse club increased by about 500 percent in the new year.

56. Plaintiff Santos was also required to work late hours because Carlo Montero, a front desk employee, resigned, and Defendant did not hire a replacement. Instead, Defendant BLINK FITNESS tried to cut costs by requiring other employees, including Plaintiff, to perform front desk duties without compensating them for overtime hours.

57. Due to understaffing, Plaintiff Santos was also forced to work late to clean restrooms.

58. From mid-January until the time of Plaintiff Santos' termination, Plaintiff worked approximately 49 to 50 hours per week. During this six-week period, Plaintiff would arrive to work early because he was taking classes at a nearby university. Rather than going home after class, Plaintiff would get to work early and either workout or eat lunch in the office. However, because the Grand Concourse club was busy and understaffed, Matias would constantly instruct Plaintiff to clock-in early and start working.

59. In or around January or February 2017, Plaintiff Santos complained to Matias that he was working too much and was not being compensated for his overtime hours. In response, Matias falsely told Plaintiff that he was working extra hours because Defendant BLINK FITNESS planned to promote him to Club Manager. Matias told Plaintiff, "You are practically running the club yourself." Matias also offered to roll-over Plaintiff's overtime hours to the next pay period, but this never occurred.

60. On or about March 1, 2017, Plaintiff Santos was scheduled for a 3:00 pm to 11:00 pm shift. However, Matias directed Plaintiff to arrive early to help clean the facility because Defendant BLINK FITNESS' Area Manager, Jacqueline Estrada ("Estrada"), was visiting the Grand Concourse club the following day. As Plaintiff and other employees were performing closing procedures at 11:30 pm, another employee, unbeknownst to Plaintiff, did not properly deposit $200 in cash into the office safe.

61. On the following day, Matias informed Plaintiff Santos that although none of the money was missing, it was improperly left at the front desk and not deposited in the safe. Matias stated that the error was Plaintiff's responsibility and warranted his termination. When Plaintiff asked Matias for the opportunity to speak to the Area Manager and Human Resources Manager, Matias denied Plaintiff's request.

62. On or about March 4, 2017, Matias informed Plaintiff Santos that he was being terminated. However, the incident on March 1, 2017 was a first offense and did not merit termination. In fact, Joseph Rodriguez, the employee who actually left the money at the front desk, was not fired.

63. Defendant terminated Plaintiff Santos because he complained about Defendant BLINK FITNESS' overtime violations.

64. **On or about April 5, 2017, Plaintiff Santos' attorneys sent a letter and draft Complaint to Todd Magazine, detailing the company's overtime violations.**

65. Nevertheless, Defendant BLINK FITNESS failed to take any remedial action and continued to unlawfully adjust employee time records and willfully withhold overtime compensation for employees, including Plaintiff Torres.

*Plaintiff Torres*

66. In or around July 2016, Plaintiff Torres began working at BLINK FITNESS' Riverdale club under Vlad Jordan.

67. In January 2017, Plaintiff Torres was promoted to the role of Assistant Manager based on her performance and leadership skills.

68. As an Assistant Manager, Plaintiff Torres routinely worked Monday through Thursday from 2:00 pm to midnight and Saturday from 1:00 pm to 7:00 pm. On Monday through Thursday, Plaintiff

was entitled to an hour-long break and another half hour break. On Saturday, Plaintiff was entitled to only a half hour break.

69. However, because the Riverdale club was understaffed and extremely busy, Plaintiff Torres was regularly required to forego her half hour breaks.

70. **In or around April 2017, Plaintiff Torres discovered that Jordan was accessing her computerized time records and altering her hours to make it appear as though she had worked a forty-hour work week or fewer overtime hours.**

71. Plaintiff Torres consistently worked more than forty hours per week as she was routinely required to work through her breaks and was also required to work late to carry out closing tasks, including cleaning the facility.

72. To save costs, Defendant BLINK FITNESS would keep the Riverdale club understaffed, particularly during evening hours, even though the club had a high volume of members exercising during this time.

73. Each week, on Monday through Friday, the Riverdale club closed at midnight.

74. Although Defendant BLINK FITNESS knew that employees, such as Plaintiff Torres, could not leave at 12:00 pm because employees needed to finish cleaning the facility after ushering out members, Defendant BLINK FITNESS' management repeatedly threatened to, and did, withhold overtime pay for employees who worked past midnight.

75. Jordan would repeatedly tell Plaintiff Torres and other employees that "adjustments will be made" to their timesheets if they continued to work late. When Plaintiff Torres complained to Jordan that it was impossible to finish cleaning the facility by midnight because that was the same time that the facility closed to patrons and the Riverdale club was understaffed, Jordan responded that he could not do anything about hiring more people and again threated to adjust employee time records.

76. Jordan told Plaintiff Torres that he needed to adjust employee time records because Defendant BLINK FITNESS management, particularly, Jacqueline Estrada, was "on his back" about paying employees overtime.

77. Although Plaintiff Torres was regularly required to work until 12:15 am or 12:30 am, Jordan would adjust her computerized records to make it appear as though she had clocked-out earlier.

78. Alternatively, if Plaintiff Torres worked late during the week, Jordan would sometimes adjust Plaintiff's clock-in time or the length of her break to reflect a forty-hour work week or fewer overtime hours. For example, on numerous occasions, Plaintiff Torres would clock-in five to ten minutes before her 2:00 pm shift. However, Jordan would adjust Plaintiff Torres' records to reflect a clock-in time of exactly 2:00 pm.

79. On one occasion, in or around July 2017, when Plaintiff Torres tried to leave her shift on time to avoid working without compensation, Plaintiff Torres was disciplined for failure to properly perform closing procedures, specifically, failure to adequately clean the facility.

80. Jordan continued to unlawfully adjust Plaintiff Torres' hours through approximately the spring and summer of 2017.

81. Jordan also adjusted time records for Front Desk and Maintenance employees at the Riverdale club who were not permitted to take breaks and worked over forty hours per week. Several employees would complain to Plaintiff Torres that Jordan was clocking them out for breaks even though they had never taken a break.

82. On several occasions when Plaintiff Torres confronted Jordan about unlawfully altering her hours, Jordan agreed to fix her time records but warned her that he would continue to unlawfully adjust her hours if she continued to work overtime.

83. By way of example, on July 8, 2017, Plaintiff Torres emailed Jordan and requested that he fix her

time records to reflect her actual hours worked.  **In response, Jordan admitted to changing Plaintiff Torres' time records and clocking her out for breaks that she never took (Exhibit A).**

84. On or about August 8, 2017, Plaintiff Torres sent an email to Jacqueline Estrada complaining about Jordan's unlawful conduct of altering employee records to avoid paying employees overtime.

85. Despite Plaintiff Torres' complaint and Plaintiff Santos' prior complaint which Estrada was aware of, Estrada did not take any remedial action.

86. Instead, less than one month later, Estrada retaliated against Plaintiff Torres by terminating her employment.

87. In or around late August 2017, several employees, including Plaintiff Torres and Jordan, were scheduled to work after hours on a Saturday to clean walls.  However, approximately two days before the scheduled cleaning, Jordan cancelled the cleaning and informed Plaintiff Torres that he would pay her for three additional hours to deceive upper management and make it appear as though they had worked on that Saturday.  In response, Plaintiff Torres stated that she did not feel comfortable with Jordan's scheme and did not want to be compensated accordingly.

88. On September 2, 2017, Plaintiff Torres accessed her employee time records and was relived to discover that Jordan had not credited her for the additional hours.  However, approximately two days later, unbeknownst to Plaintiff Torres, Jordan accessed her time records and made the adjustments.  When Estrada questioned Plaintiff Torres about the additional hours, Plaintiff Torres informed Estrada that she had opposed Jordan's unlawful conduct and believed that he had not followed through with it based on her inspection of her time records.  Despite Plaintiff Torres' reasonable explanation and lack of culpability, Estrada terminated her employment.

89. Defendant BLINK FITNESS terminated Plaintiff Torres because she complained about Defendant

BLINK FITNESS' overtime violations.

90. Defendant BLINK FITNESS' unlawful actions were a policy and/or plan implemented in its fitness clubs.

91. Defendant BLINK FITNESS deprived Plaintiffs, and all others similarly situated, of any information or understanding of their rights under the federal and state overtime laws.

92. Defendant failed to keep accurate records of Plaintiffs' hours worked.

93. Defendant failed to furnish Plaintiff with statements containing their accurate pay and hour information.

94. Defendant's overtime violations were willful.

95. Defendant's unlawful conduct has been widespread, repeated, and consistent.

96. As a result of Defendant's retaliatory conduct, Plaintiffs Santos and Torres felt extremely humiliated, degraded, victimized, embarrassed, and emotionally distressed.

97. As a result of Defendant's retaliatory conduct, Plaintiffs suffered severe emotional distress and physical ailments.

98. As a result of the acts and conduct complained of herein, Plaintiffs have suffered and will continue to suffer the loss of income, the loss of a salary, bonuses, benefits, and other compensation which such employment entails, and Plaintiffs have also suffered future pecuniary losses, emotional pain, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

99. Defendant's conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law.  As such, the Plaintiffs demand Punitive Damages.

## AS A FIRST CAUSE OF ACTION
## VIOLATION OF THE FAIR LABOR STANDARDS ACT
## <u>OVERTIME</u>

100. Plaintiffs repeat and reallege each and every allegation made in the above paragraphs of this Complaint as if same were set forth herein fully at length.

101. Defendant BLINK FITNESS willfully employed Plaintiffs, and all others similarly situated, in the afore-mentioned enterprise for work weeks longer than 40 hours and failed to compensate Plaintiffs, and all others similarly situated, for their employment in excess of 40 hours per week, at a rate of at least one and one-half times the rate at which they were employed.

102. Defendant BLINK FITNESS failed to pay overtime wages to Plaintiffs, and all others similarly situated, as required by the FLSA, 29 U.S.C. §201 et seq. and its implementing regulations.

103. Defendant's failure to pay Plaintiffs, and all others similarly situated, overtime pay in accordance with the FLSA, was a direct violation of the FLSA, specifically 29 U.S.C. §207.

104. Defendant's failure to pay proper overtime wages for each hour worked over 40 per week was willful within the meaning of 29 U.S.C. §255.

105. Defendant's failure to comply with the FLSA caused Plaintiffs, and others similarly situated, to suffer loss of wages.


## AS A SECOND CAUSE OF ACTION
## VIOLATION OF THE FAIR LABOR STANDARDS ACT
## <u>RETALIATION</u>

106. Plaintiffs repeat and reallege each and every allegation made in the above paragraphs of this Complaint as if same were set forth herein fully at length.

107. 29 U.S.C. § 215 prohibits an employer from discharging or discriminating against an employee for exercising rights under the FLSA. Specifically, it is illegal to discharge or in any other manner

discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter, or has testified or is about to testify in any such proceeding, or has served or is about to serve on an industry committee; 29 U.S.C.A. § 215.

108. Defendant BLINK FITNESS retaliated against Plaintiffs Santos and Torres because they complained about not being paid their rightful wages.

109. Such retaliation included, but is not limited to, terminating Plaintiffs' employment.

### AS A THIRD CAUSE OF ACTION
### VIOLATION OF NYLL § 650 *et seq.*
### and VIOLATION OF Title 12 NYCRR Section 142-2.2
### **OVERTIME**

110. Plaintiffs repeat and reallege each and every allegation made in the above paragraphs of this Complaint as if same were set forth herein fully at length.

111. Plaintiffs, and all others similarly situated, were employees of Defendant BLINK FITNESS within the meaning of NYLL § 190(2) and Title 12 NYCRR 142-2.14.

112. Defendant failed to pay Plaintiffs, and all others similarly situated, a premium for hours worked in excess of 40 hours per week.

113. Defendant violated Plaintiffs' rights to overtime pay under NYLL § 650 *et seq*. and Title 12 NYCRR 142-2.2. Defendant failed to pay Plaintiffs, and all others similarly situated, for all hours worked.

114. On account of such violations, Defendant is liable to Plaintiffs, and all others similarly situated, for actual, statutory, and liquidated damages.

## AS A FOURTH CAUSE OF ACTION
## UNDER NEW YORK LABOR LAW § 215
## <u>RETALIATION</u>

115. Plaintiffs repeat and reallege each and every allegation made in the above paragraphs of this Complaint as if same were set forth herein fully at length.

116. Section 215 of the New York State Labor Law makes it illegal for employers to discharge, penalize, or in any manner discriminate or retaliate against an employee for making a complaint about a possible labor law violation to the employer.

117. Defendant BLINK FITNESS retaliated against Plaintiffs Santos and Torres because they complained about not being paid their rightful wages.

118. Such retaliation included, but is not limited to, terminating Plaintiffs' employment.

**WHEREFORE**, Plaintiffs, on behalf of themselves, the FLSA Collective and the NYLL Class, prays for relief as follows:

A. Designation of this action as a collective action on behalf of the Collective and prompt issuance of notice pursuant to 29 U.S.C. § 216(b);

B. Certification of the Class pursuant to Rule 23 of the Federal Rules of Civil Procedure;

C. Designation of the named Plaintiffs as Class Representatives, and counsel of record as Class counsel;

D. Declaring that the Defendant violated the Fair Labor Standards Act;

E. Declaring that Defendant BLINK FITNESS violated all applicable New York State Wage and Hour Laws and New York State Labor Laws;

F. Declaring that Defendant BLINK FITNESS' violations of overtime wage protections were willful;

G. Granting judgments to Plaintiffs for their claims for unpaid wages as secured by the FLSA and NYLL as well as an equal amount in liquidated damages;

H. Awarding damages to Plaintiffs Santos and Torres, retroactive to the date of discharge, for all lost wages and benefits, past and future, back pay and front pay, resulting from Defendant's unlawful discharge and to otherwise make Plaintiffs whole for any losses suffered as a result of such unlawful employment practices;

I. Awarding Plaintiffs Santos and Torres compensatory damages for mental, emotional, and physical injury, distress, pain and suffering and injury to their reputation for Defendant's retaliatory conduct;

J. Awarding Plaintiffs punitive damages;

K. Awarding Plaintiffs attorneys' fees, costs and expenses incurred in the prosecution of the action;

L. Awarding Plaintiffs such other and further relief as the Court may deem equitable, just, and proper to remedy the Defendant's unlawful employment practices.

## JURY DEMAND

Plaintiffs request a jury trial on all issues to be tried.

**WHEREFORE**, Plaintiffs demand judgment against Defendant, in an amount to be determined at the time of trial plus interest, punitive damages, attorneys' fees, costs, and disbursements of action; and for such other relief as the Court deems just and proper.

Dated: New York, New York
January 12, 2018

                                     **PHILLIPS & ASSOCIATES,**
                                     **ATTORNEYS AT LAW, PLLC**

By: _____/s/_____
       Erica L. Shnayder, Esq.
       Bryan S. Arce, Esq.
       *Attorneys for Plaintiffs*
       45 Broadway, Suite 620
       New York, NY 10004
       Tel: 212-248-7431
       Fax: 212-901-2107
       Email: eshnayder@tpglaws.com